N2SZZSINP-DC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                           22 Cr. 673 (LAK)

 5   NISHAD SINGH,

 6                                           Plea
                    Defendant.
 7   ------------------------------x

 8                                           New York, N.Y.
 9                                           February 28, 2023
                                             11:20 a.m.
10

11   Before:

12                     HON. LEWIS A. KAPLAN,

13                                           District Judge

14                          APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   DANIELLE SASSOON
     NICOLAS ROOS
18   ANDREW ROHRBACH
     SAMUEL RAYMOND
19        Assistant United States Attorneys

20   COOLEY LLP
          Attorneys for Defendant
21   BY:  ANDREW GOLDSTEIN
          RUSSELL CAPONE
22

23   Also Present:

24   KRISTIN ALLAIN, FBI
     LUKE BOOTH, FBI
25
```

N2SZZSINP-DC

                    (Case called; appearances noted)

                    THE COURT:  Good morning.  I understand that your

client wishes to waive indictment and enter a plea; is that

right?

                    MR. GOLDSTEIN:  That's correct, Judge Kaplan.

                    THE COURT:  Okay.  Andy, please swear the defendant.

                    (Defendant sworn)

                    THE COURT:  Mr. Singh, I understand you want to enter

a plea of guilty; is that correct?

                    THE DEFENDANT:  Yes, your Honor.

                    THE COURT:  Before I accept your plea, I'm going to

ask you some questions to establish to my satisfaction that you

are pleading guilty because you are guilty and not for some

other reason.  If you don't understand anything I ask or you

have a desire, at any point, to talk to your attorney, just let

me know, and we will take care of whatever the problem is.  All

right?

                    THE DEFENDANT:  Understood.

                    THE COURT:  OK.  I take it you were born in the United

States, and that English is your first language; is that right?

                    THE DEFENDANT:  Yes, your Honor.

                    THE COURT:  OK.  Do you understand that you are now

under oath, and that if you answer any of my questions falsely,

your answers later could be used against you in a further

prosecution for perjury or making a false statement?

N2SZZSINP-DC

1          THE DEFENDANT:  Yes.

2          THE COURT:  How old are you?

3          THE DEFENDANT:  Old, you said?

4          THE COURT:  Yes.

5          THE DEFENDANT:  27 years old.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  I got a bachelor's degree.

8          THE COURT:  Are you under the care of a doctor or a

9    mental health professional at this point?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Let me narrow it then.

12          Are you under the care of a mental health

13    professional?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And what sort of a mental health

16    professional?

17          THE DEFENDANT:  A psychiatrist.

18          THE COURT:  And for what malady?

19          THE DEFENDANT:  Anxiety and depression.

20          THE COURT:  All right.  Have you been hospitalized in

21    the past for mental illness?

22          THE DEFENDANT:  No.

23          THE COURT:  Have you had any medicine, pills,

24    narcotics, or alcohol in the last 24 hours?

25          THE DEFENDANT:  I've had anxiety and depression

N2SZZSINP-DC

1    medication.

2              THE COURT:  And what have you had in the last 24

3    hours?

4              THE DEFENDANT:  Clonopin and Lexapro for anxiety and

5    depression.

6              THE COURT:  And do either of those drugs or the

7    combination of those drugs interfere with your ability to

8    engage in rational thought?

9              THE DEFENDANT:  No, they do not.

10             THE COURT:  Is your mind clear this morning?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do either counsel have any doubt as to the

13    defendant's competence to plead.

14             Ms. Sassoon?

15             MS. SASSOON:  Government does not, your Honor.

16             THE COURT:  Sir?

17             MR. GOLDSTEIN:  We do not, your Honor.

18             THE COURT:  On the basis of Mr. Singh's responses to

19    my questions, I find that he is fully capable to enter an

20    informed plea.

21             Now, Mr. Singh, do you understand that you are

22    entitled under the constitution to be charged with a federal

23    crime of this nature only on the basis of an indictment

24    returned by a grand jury, but that you waived that right and

25    agreed to be charged on the basis only of an information signed

N2SZZSINP-DC

1  by the United States Attorney?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  You should find before you a document

4  marked as Court Exhibit A, which I understand to be the waiver

5  of indictment.

6          Did you sign that document?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Did you read it before you signed it?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Did you discuss its implications fully

11 with your attorneys?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did you knowingly and voluntarily waive

14 your right to be prosecuted only on the basis of a grand jury

15 inditement?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Have you had an adequate opportunity to

18 discuss the case with your lawyers?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And are you satisfied with your lawyers

21 and their representation of you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  I'm now going to describe your rights

24 under the constitution and laws.  Please listen carefully, I'm

25 going to ask at the end whether you understood everything I

N2SZZSINP-DC

1    said.

2           You're entitled to a speedy and public trial by jury

3    on the charges contained in the information against you.  If

4    there were a trial, you would be presumed innocent and the

5    government would be obliged to prove you guilty by competent

6    evidence and beyond a reasonable doubt before you could be

7    found guilty.  You would not have to prove that you're

8    innocent.  You would be entitled to be represented by a lawyer

9    at every stage of your case.  If you couldn't afford a lawyer,

10   a lawyer would be provided for you at public expense.  The

11   government would have to bring its witnesses into court to

12   testify in your presence.  Your lawyer could cross examine the

13   government's witnesses.  Your lawyer could object to evidence

14   offered by the government, and your lawyer also could offer

15   evidence in your defense.  You would have the right to the

16   issuance of subpoenas, which are a form of compulsory process

17   issued by the Court to compel the attendance of witnesses to

18   testify in your defense.  You would have the right to testify,

19   if you chose to do so.  You would also have the right not to

20   testify.  And if you elected not to testify no inference of

21   guilt could be drawn from that fact.

22          You have the right to enter a plea of not guilty even

23   now.  But if you plead guilty, and I accept the plea, there

24   will be no further trial of any kind.  You will waive your

25   right to a trial and all the other rights that I just

1    mentioned.  I'll enter a judgment of guilty and sentence you on

2    the basis of your guilty plea after I consider a presentence

3    report.

4            You'll also have to waive your right not to

5    incriminate yourself because I'm going to ask you questions

6    about what you did in order to satisfy myself that you are

7    guilty as charged.

8            Do you understand what I said so far?

9            THE DEFENDANT:  Yes, your Honor, I understand.

10            THE COURT:  Have you received a copy of the

11    information that contains the written charges against you?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Have you discussed it fully with your

14    attorneys?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Have you discussed the charges in the

17    information to which you intend to plead guilty with your

18    counsel?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you understand that you are charged in

21    Count One of the information with conspiracy to commit wire

22    fraud on customers of FTX in violation of 18 U.S. Code 1349.

23            Do you understand that's the charge in Count One?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Ms. Sassoon, please state the elements of

N2SZZSINP-DC

```
 1    the charge.

 2                MS. SASSOON:  Yes, your Honor.

 3                Count One charges the defendant with conspiracy to

 4    commit wire fraud, as you noted, in violation of 18 U.S.C.

 5    Section 1349.  There are two elements:

 6                First, the existence of the conspiracy to commit wire

 7    fraud;

 8                And, second, that the defendant knowingly and

 9    willfully became a member of and joined in the conspiracy.

10                The crime of wire fraud, which is both the object of

11    Count One and the offense charged in Count Two, which is

12    substantive wire fraud under 18 U.S.C. Section 1343, has three

13    elements, which I can describe now.

14                THE COURT:  Please.

15                MS. SASSOON:  First, there is a scheme or artifice to

16    defraud or to obtain money or property by materially false and

17    fraudulent pretenses, representations or promises;

18                Second, that the defendant knowingly participated in

19    the scheme or artifice to defraud with knowledge of its

20    fraudulent nature and with specific intent to defraud, or that

21    he knowingly and intentionally aided and abetted others in the

22    scheme.

23                And, third, that the execution of that scheme the

24    defendant used or caused the use of interstate or international

25    wires.  "Wires" referring to the use of telephone, text
```

message, emails and also refers to wire transfer of funds.

With respect to that count and all others in the information, if the case proceeded to trial, the government would also have to prove venue by a preponderance of the evidence. Although, any defense based on venue is based in the plea agreement here.

THE COURT: Thank you.

Mr. Singh, do you understand that in order to convict you on Count One, the government would have to prove the two elements that Ms. Sassoon described to you beyond a reasonable doubt, and but for your waiver of venue would have had to prove the propriety of that count being brought in this court by a preponderance of the evidence.

Do you understand those elements?

THE DEFENDANT: I understand.

THE COURT: And do you understand the government's burden of proof, as I just described it to you, with respect to those elements?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the maximum possible penalty for Count One is 20 years' imprisonment. The greater of a fine of $250,000, or twice the gross gain, or twice the gross loss, plus an order of restitution, a mandatory special assessment of $100, a term of supervised release of three years. And if you were released on supervised release,

N2SZZSINP-DC

1    and found to have violated the terms thereof, you could be

2    sentenced to an additional prison term of two years without

3    credit for any time served on release.

4            Do you understand that?

5            THE DEFENDANT:  I understand.

6            THE COURT:  Ms. Sassoon, I accurately stated the

7    consequences of a violation of supervised release, did I?

8            MS. SASSOON:  Yes, your Honor.

9            THE COURT:  Thank you.

10           Now, do you understand that you are charged in

11   Count Two of the information with the substantive crime of wire

12   fraud on customers of FTX and aiding and abetting the same in

13   violation of 18 U.S. Code 1343 and 2.  And I point out this is

14   the substantive crime of wire fraud as opposed to a conspiracy

15   to commit wire fraud; that is the subject of Count One.

16           Do you understand that's the charge in Count Two?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Ms. Sassoon already stated the three

19   elements of the substantive crime of wire fraud.

20           Do you understand the elements of that charge as

21   stated a moment ago by the government?

22           THE DEFENDANT:  I do.

23           THE COURT:  And once again, as on all of the counts of

24   this indictment, do you understand that to convict you on

25   Count Two, the government would have to prove those three

N2SZZSINP-DC

1    elements beyond a reasonable doubt?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand that the maximum

4    possible penalty for the substantive crime of wire fraud is

5    exactly the same as that on Count One?

6              THE DEFENDANT:  Yes, your Honor, I understand.

7              THE COURT:  Do you understand that you are charged in

8    Count Three with conspiracy to commit commodities fraud?

9              THE DEFENDANT:  Yes.

10             THE COURT:  At this time, I'll ask Ms. Sassoon to

11   state the elements of conspiracy to commit wire fraud.

12             MS. SASSOON:  Thank you, your Honor.  And I appreciate

13   this has been broken up because it's a lot of elements.

14             THE COURT:  Yes.

15             MS. SASSOON:  So Count Three charges the defendant

16   with participating in an illegal conspiracy in violation of

17   18 U.S.C. Section 371.  And I'll note that Counts Four and Six

18   likewise charge conspiracies under that statute, although with

19   different objects.  Conspiracy under the offense clause 371 has

20   three elements:

21             First, that two or more persons entered the unlawful

22   agreement charged in the specific count of the information;

23             Second, that the defendant knowingly and willfully

24   became a member of that alleged conspiracy;

25             And, third, that one of the members of the conspiracy

N2SZZSINP-DC

1    knowingly committed at least one overt act in furtherance of

2    the conspiracy.

3           The object of the conspiracy charged in Count Three,

4    as your Honor noted, is commodities fraud.  In violation of

5    Title 7, United States Code, Sections 9, 1, and 13(a)(5) and

6    Title 17 CFR section 180.1.

7           There are three elements to this crime:

8           First, in connection with any swap or contract of sale

9    of any commodity or interstate commerce or contract for future

10   delivery to on or subject the rules of any registered entity.

11          And, second, the defendant or any of his

12   coconspirators did anyone or more of the following:

13          A, employed or attempted to use or employ a

14   manipulative, device, scheme or artifice to defraud.

15          B, made or attempted to make an untrue or misleading

16   statement of a material fact or omitted to state a material

17   fact necessary to make the statements made not untrue or

18   misleading;

19          Or C, engaged or attempted to engage in an act,

20   practice, or course of business that operated or would operate

21   as a fraud or deceit upon any person;

22          And, third, that the defendant acted knowingly,

23   willfully and with the intent to defraud.

24          THE COURT:  Thank you.

25          Do you understand, Mr. Singh, the elements of the

N2SZZSINP-DC

1    charge of conspiracy to commit commodities fraud as

2    distinguished from the substantive offense of commodities

3    fraud?

4              THE DEFENDANT:  I do.

5              THE COURT:  And do you understand that to convict you

6    on this charge, the government would have to prove the elements

7    of conspiracy to commit wire fraud beyond a reasonable doubt?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you understand that the maximum

10   possible penalty in the event of conviction on Count Three

11   would be five years' imprisonment, plus a fine, restitution, a

12   mandatory special assessment, and a term of supervised release,

13   all identical to those on Count One?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that you are charged in

16   Count Four of the information with conspiracy to commit

17   securities fraud?

18             THE DEFENDANT:  Yes.

19             THE COURT:  I'll ask Ms. Sassoon to state the elements

20   of that crime.

21             MS. SASSOON:  Yes.  So I already noted the elements of

22   a conspiracy under Section 371.  So I'll now turn to the object

23   of the conspiracy charge in Count Four, which is securities

24   fraud in violation of Title 15, United States Code, Section

25   78j(b) and 78ff, and Title 17 CFR, Section 240.10b-5.  There

N2SZZSINP-DC

1    are three elements of securities fraud:

2              First, is that in connection with the purchase or sale

3    of securities, the defendant either employed a device, scheme,

4    or artifice to defraud, or made an untrue statement of a

5    material fact or omitted to state a material fact which made

6    what was said under the circumstances misleading, or engaged in

7    an act, practice, or course of business that operated or would

8    operate as a fraud or deceit upon a purchaser or seller;

9              Second, that the defendant acted knowingly, willfully,

10   and with intent to defraud.

11             And, third, that the defendant knowingly used or

12   caused to be used any means or instruments of transportation or

13   communication in interstate commerce or the use of the mails in

14   furtherance of the fraudulent conduct.

15             THE COURT:  Thank you.

16             Mr. Singh, do you understand the elements of the

17   charge of conspiracy to commit wire fraud?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  And do you understand that to convict you

20   on that count, the government would have to prove each of those

21   elements beyond a reasonable doubt?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you understand that the maximum

24   possible penalty in the event of conviction on Count Four is

25   exactly the same as on Count Three?

N2SZZSINP-DC

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Do you understand that you are charged in

3    Count Five with conspiracy to commit money laundering?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Ms. Sassoon?

6          MS. SASSOON:  Count Five charges the defendant, as

7    your Honor noted, with conspiracy to commit money laundering in

8    violation of 18 U.S.C. Section 1956(h) money laundering

9    conspiracy are:

10          First, that two or more people entered into an

11    unlawful agreement to commit money laundering;

12          And, second, that the defendant knowingly and

13    willfully entered into the agreement.

14          Count Five charges that there were two objects of the

15    conspiracy:

16          One, concealment of money laundering;

17          And, two, spending money laundering;

18          For the first object, concealment money laundering,

19    there are three elements:

20          First, that the defendant conducted or attempted to

21    conduct a financial transaction which must, in some way or

22    degree, have affected interstate or foreign commerce;

23          Second, that the financial transaction at issue

24    involved the proceeds of specified unlawful activity, which

25    here is the proceeds of the wire fraud scheme charged in Count

N2SZZSINP-DC

Two;

Third, that the defendant knew that the financial transaction involved the proceeds of some form of unlawful activity, and that the defendant knew that the transaction was designed in or in part either to disguise the nature and location, source, ownership, or control of the proceeds of the unlawful activity.  So I think that's actually four elements, your Honor.

The second object of Count Five is engaging in a monetary transaction of over $10,000 in property derived from specified unlawful activity.  The elements of this object are:

First, that the defendant engaged in a monetary transaction in or affecting interstate commerce;

Second, that the monetary transaction involved criminally derived profit of a value greater than $10,000.

And, third, that the property was derived from specified unlawful activity; again, here, wire fraud proceeds from the scheme alleged in Count Two.

Finally, that the defendant acted knowing that the transaction involved proceeds of the criminal offense, and that the transaction took place in the United States.

THE COURT:  Thank you.

Did you understand, Mr. Singh, the elements of this charge as stated by the government?

THE DEFENDANT:  Yes, your Honor.

N2SZZSINP-DC

1           THE COURT:  Do you understand that to convict you on

2      this charge, the government would have to prove each of those

3      elements beyond a reasonable doubt?  Subject to this caveat, to

4      the extent that there is a charge of conspiracy, the government

5      would have to prove beyond a reasonable doubt only one of the

6      alleged objects of the conspiracy rather than all.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you understand that the maximum

10     possible penalty of this crime is the same as on Count One?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that you are charged in

13     Count Six with conspiracy to defraud the United States and

14     willfully violate the Federal Election Campaign Act?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Ms. Sassoon?

17          MS. SASSOON:  Yes.  Thank you, your Honor.

18          And I believe just with respect to Count Five the fine

19     provision is slightly different than for the other charge as

20     noted in the plea agreement.

21          THE COURT:  OK.  Please enlighten us.

22          MS. SASSOON:  A maximum fine pursuant to 18 U.S.C.

23     Section 1956(a)(1)(B), the greatest of $500,000, or twice the

24     value of the property involved in the transaction.

25          THE COURT:  Thank you.  I stand corrected.

N2SZZSINP-DC

1          Mr. Singh, did you understand that what was just said?

2          THE DEFENDANT:  I understand.

3          THE COURT:  All right.

4          MS. SASSOON:  Turning now to Count Six of the

5     information, it charges the defendant with another conspiracy

6     under 18 U.S.C. Section 371, whose elements I previously

7     delineated.  The object of this conspiracy is conspiring to

8     violate the Federal Election Campaign Act and to defraud the

9     Federal Election Commission.  So I'll walk through those

10    objects now.

11         The first object is the object of making a political

12    contribution in the name of another person in violation of

13    Section 30122 of Title 15 of the United States Code.  The

14    elements of that offense are:

15         One, making one or more contributions;

16         Two, in the name or names of one or more persons other

17    than the true source of the funds.

18         Three, with the aggregate amount of such contribution

19    being $25,000 or more in a calendar year;

20         And, four, doing so knowingly and willfully.

21         The second object of the conspiracy is making a

22    political contribution from a corporation.  Under the federal

23    election laws, corporations are prohibited from making direct

24    contributions to political candidates.  It is unlawful for any

25    corporation to make such a contribution in violation of

N2SZZSINP-DC

1    Section 30118 of Title 15 of the United States Code.  The

2    elements of this object are:

3         One, making one or more contributions to candidates.

4         Two, via corporation.

5         Three, with the aggregate amount of such contribution

6    being $25,000 or more in a calendar year.

7         And, four, that it was done knowingly and willfully.

8         The final object is a conspiracy to defraud the

9    Federal Election Commission.  The elements are 12 or more

10   persons agreed to impair, impede, obstruct or defeat by

11   fraudulent or dishonest means the lawful, regulatory and/or

12   enforcement function of an agency.

13        And, two, the defendant knowingly became a member of

14   that conspiracy.

15        And, three, an overt act in furtherance of that

16   conspiracy was committed.

17        THE COURT:  Thank you.

18        Mr. Singh, do you understand the elements of the

19   charges just stated by the government?

20        THE DEFENDANT:  I do.

21        THE COURT:  Do you understand that to convict you on

22   this count, the government would have to prove each of those

23   essential elements beyond a reasonable doubt, but subject also

24   to the same qualification I indicated to you with respect to

25   the previous count, namely, that they need to prove only one of

N2SZZSINP-DC

the several alleged objects of the alleged conspiracy?

THE DEFENDANT:  Yes, understood.

THE COURT:  Do you understand that the maximum possible penalty for Count Six is the same as on Count Three?

THE DEFENDANT:  Yes, understood.

THE COURT:  Do you understand that you will be sentenced on each of these six counts?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the sentences could be imposed either concurrently or consecutively, and that if you were sentenced to the statutory maximum on each of the six counts, the term of imprisonment would be the total of the terms imposed on each of the six counts?

THE DEFENDANT:  Yes, I understand.

THE COURT:  So that if the sentences were imposed consecutively and the sentences were the maximum term of imprisonment, you could actually be imprisoned under a sentence calling for 75 years in jail?

THE DEFENDANT:  I understand.

THE COURT:  Do you understand that if you enter a plea of guilty, you've agreed to forfeit to the United States any money or property you received or gained as a result of the offenses charged in the indictment or that were used to commit the offenses?

THE DEFENDANT:  Yes, I understand.

N2SZZSINP-DC

1          THE COURT:  The forfeiture order has been signed, has

2    it?

3          MS. SASSOON:  Yes, your Honor.

4          THE COURT:  All right.  Andy, do we have that marked?

5          THE DEPUTY CLERK:  I did not mark it.

6          THE COURT:  You did not mark it?

7          THE DEPUTY CLERK:  I believe it's up there.

8          THE COURT:  Let's mark one of them as Court Exhibit C.

9          THE DEPUTY CLERK:  Should this go before the

10   defendant?

11         THE COURT:  Yes, please.

12         Mr. Singh, the clerk has placed before you a document

13   marked Court Exhibit C.

14         Is that your signature on the last page?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Did you read it before you signed it?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Did you have the advice of counsel before

19   you signed it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And are you satisfied with the advice you

22   received from your counsel?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And did you sign it voluntarily and

25   knowingly?

N2SZZSINP-DC

1          THE DEFENDANT:  I did.

2          THE COURT:  Do you know its terms?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Ms. Sassoon, do you have any need to go

5     any farther with that?

6          MS. SASSOON:  No.  Thank you, your Honor.

7          THE COURT:  OK.  I'm now going to describe the

8     sentencing process, Mr. Singh.  I'm sure that Mr. Capone and

9     Mr. Goldstein have done that already, but it's my job to do it

10    as well.

11         The law requires that you be sentenced in accord with

12    the Sentencing Reform Act and that I take into account the

13    United States Sentencing Guidelines.  The sentencing guides, in

14    turn, require that I take into account the actual conduct in

15    which you've engaged, which may be more extensive than what's

16    charged in the information, that I consider the victim or

17    victims of your offense, if there were any, the role that you

18    played, whether you engaged in any obstruction of justice, and

19    whether you've accepted responsibility for your actions, and

20    your criminal history, if you have one.  The guidelines provide

21    for the computation of a range of a minimum and a maximum

22    months of imprisonment.  You may be sentenced within that

23    guideline range.  The Court must consider the guideline range

24    and various other factors enumerated in the guidelines and in

25    the Sentencing Reform Act as well as factors articulated in

N2SZZSINP-DC

1   Section 3553 of Title 18 of the U.S Code.  But the Court is not

2   obliged to follow the sentencing guidelines.  The only thing

3   you can be sure of about the sentence in your case is that I

4   can't sentence you to something more severe than the statutory

5   maximum that I just explained to you a few minutes ago.

6          Do you understand that?

7          THE DEFENDANT:  I understand, your Honor.

8          THE COURT:  The probation department will be preparing

9   a written report setting forth the results of an investigation

10  that will conduct into your background and into the offenses to

11  which you are pleading guilty.  It's only after it does that

12  that the probation office will state its view as to what they

13  think the applicable sentencing guideline range should be.  The

14  Court isn't bound by the probation department's view either.

15         Now, I understand you entered into a plea agreement.

16  And we're going to discuss that in a little more detail in a

17  minute.

18         Do you have it in front of you?  It's marked as Court

19  Exhibit B?

20         THE DEFENDANT:  Oh, I do have it in front of me.

21         THE COURT:  And does it bear your signature?

22         THE DEFENDANT:  Yes, it does, your Honor.

23         THE COURT:  And did you read it carefully before you

24  signed it?

25         THE DEFENDANT:  Yes.

N2SZZSINP-DC

1          THE COURT:  Did you discuss it fully with your

2     attorneys before you signed it?

3          THE DEFENDANT:  I did.

4          THE COURT:  Do you have any unanswered questions about

5     it?

6          THE DEFENDANT:  I do not.

7          THE COURT:  For all the reasons I just articulated to

8     you, it's impossible to say for certain what your guideline

9     range will be or what sentence will be imposed.  If anyone has

10    tried to predict either one of those things to you, whatever

11    prediction you heard may be wrong.  Whoever made the prediction

12    may not have all the information that the Court will have when

13    you are sentenced.  The only thing, just to repeat, that you

14    can be sure of is that the sentence can't be more than the

15    statutory maximum.

16         I know you stated earlier that you were a born in the

17    United States and therefore are a citizen.  I'm obliged it

18    advise you that if you are not a U.S. citizen, a finding that

19    you are guilty of a felony may have a negative impact on your

20    immigration status and any application you may have in the

21    future for permission to remain in the United States or become

22    a citizen.  You may be subject to an order of deportation or

23    removal as a result of this guilty plea if are you not a U.S.

24    citizen.

25         Do you understand that?

N2SZZSINP-DC

1          THE DEFENDANT:  Yes, your Honor.  I understand.

2          THE COURT:  OK.  It's important that you understand

3   also that you won't be able to withdraw your guilty plea on the

4   ground that any prediction you may have heard about the

5   guideline range or the sentence turns out to be incorrect.

6          Do you understand that?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Do you understand anything -- everything I

9   said?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Maybe I should ask whether you understood

12   anything I said.

13         THE DEFENDANT:  Yes, to both.

14         THE COURT:  But I have no doubt in your case that you

15   understood every word of it.

16         Has anyone offered you any inducements or threatened

17   you or anyone else or forced you in way to plead guilty?

18         THE DEFENDANT:  No.

19         THE COURT:  Now, we already talked about the plea

20   agreement.  Has anyone made any promises to you other than what

21   whatever is set forth in that document that induced you to

22   plead guilty?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  Has anyone made any promises or assurances

25   to you as to what your sentence will be?

N2SZZSINP-DC

```
 1              THE DEFENDANT:  No, your Honor.

 2              THE COURT:  OK.  Now, there are a couple of other

 3    technicalities that need to be complied with.  Before we go on

 4    to the next part of this proceeding, I direct the prosecution,

 5    once again, to comply with its obligations under Brady v.

 6    Maryland and its progeny to disclose to the defense all

 7    information, whether admissible or not, that is favorable to

 8    the defendant, material either to guilt or to punishment and

 9    known to the prosecution.  Possible consequences of

10    noncompliance may include dismissal of individual charges, or

11    the entire case, exclusion of evidence, and professional

12    discipline, or court sanctions on the attorneys responsible.  I

13    will be preparing another written order, once again, describing

14    all of this and the possible consequences of failing to meet

15    it.  And, once again, I direct the prosecution to review and

16    comply with that order.

17              Does the prosecution, again, confirm that it

18    understands its obligations and will comply with them?

19              MS. SASSOON:  Yes, your Honor.  The government

20    understood its obligation.

21              I would just note on the bottom of page 5 into page 6

22    of the agreement is a paragraph of about the defendant choosing

23    not to request discovery material and understanding that if he

24    had not entered a plea of the guilty, the government would be

25    required to produce Rule 16 material and further be required to
```

N2SZZSINP-DC

produce material pursuant to *Brady* and Rule 5(f) and, if the

defendant proceeded to trial, impeachment material under

*Giglio*.

THE COURT:  Do you understand what counsel just read

to you?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Thank you.  And you understood it when you

signed the plea agreement?

THE DEFENDANT:  Yes, I did.

THE COURT:  OK.  Now, we need to go through the

charges.

Did you, as charged in Count One of the information,

conspire with one or more other persons to commit wire fraud on

customers of FTX?

THE DEFENDANT:  Yes.

THE COURT:  Please tell me, in your own words, what

you did, that in your mind, makes you guilty of that offense.

MR. GOLDSTEIN:  Your Honor, Mr. Singh prepared an

allocution that groups the facts of Counts One through Four

together and then Counts Five and Six together.  Could he

proceed in that way?

THE COURT:  We could do it that way.  Just let me

cover the other three counts.

Did you, as charged in Count Two of the information,

commit the substantive crime of wire fraud on customers of FTX

N2SZZSINP-DC

1    or aid and abet in doing so?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  Did, you as charged in Count Three of the

4    information, conspire to commit commodities fraud?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Did you, as charged in Count Four of the

7    information, conspire to commit securities fraud?

8                THE DEFENDANT:  Yes.

9                THE COURT:  All right.  Now, tell me what you did

10   that, in your mind, makes you guilty of all four offenses those

11   charged in Counts One through Four.

12               THE DEFENDANT:  In 2017, I began working at Alameda

13   Research as an engineer.  In 2019, at the request of Sam

14   Bankman-Fried and Gary Wang, I moved from Alameda to FTX and

15   similarly began working as an engineer.  Eventually, I became

16   the head of engineering at FTX, where I was responsible for

17   coding, other aspects of FTX's platform, and managing junior

18   members of the engineering team.

19               By mid-2022, I understood that Alameda was borrowing

20   funds from FTX that belonged to other customers.  I understood

21   that customers were not aware of this, and had not consented to

22   such borrowing.

23               In June of 2022, I participated in an effort to more

24   precisely track the amount of customer money that Alameda had

25   borrowed from FTX and confirmed that it was several billion

1    dollars' worth.

2              By early September 2022, I came to understand that

3    Alameda could not repay what it owed.  I knew that Sam

4    Bankman-Fried then tried to raise additional funds from

5    investors, and I understood that investors would not have been

6    told the full truth about FTX's financial condition.

7              In addition, despite understanding at that point, that

8    Alameda was in substantial debt to FTX customers, in my role as

9    a member of the leadership team, I agreed to certain

10   expenditures that originated with Alameda funds, and were,

11   therefore effectively coming from FTX customer money.  This

12   involved electronic messages and other wire communications.

13             In addition, at Sam Bankman-Fried's direction, I took

14   actions to make it appear that FTX's revenues were higher than

15   what they were.

16             In 2022, I provided that misleading information to

17   auditors.  I understood that that information would be used by

18   Sam Bankman-Fried and others in attempting to raise or in

19   raising funds from investors.

20             I knew at that time that I participated in each of

21   these events that my conduct was wrong.

22             THE COURT:  All right.  I have a couple of questions.

23             You said a few moments ago that in 2022 you came to

24   understand that investors would not have been told various

25   things in connection with the raising of additional capital.

N2SZZSINP-DC

1    Did I understand you correctly?

2              THE DEFENDANT:  That's correct.

3              THE COURT:  How did you come to understand that?

4              THE DEFENDANT:  I -- can I have one movement to --

5              (Defendant conferred with counsel)

6              THE COURT:  Please.

7              THE DEFENDANT:  Your Honor, I knew that Sam was

8    attempting to raise from investors.  I knew that affirmatively.

9    I had the strong belief that he would not share FTX's full

10   financial condition with them.

11             THE COURT:  Well, how did you come to have that

12   belief?

13             THE DEFENDANT:  From discussions with Sam.

14             THE COURT:  So is that something he told you?

15             THE DEFENDANT:  Not explicitly, your Honor.  But I

16   understood it implicitly that he would not share FTX's full

17   financial condition.

18             THE COURT:  All right.

19             And near the end of your prepared statement, you

20   indicated and possibly you can read it, again, it must have

21   been the last paragraph.

22             THE DEFENDANT:  Sure, your Honor.

23             At Sam Bankman-Fried's direction, I took actions to

24   make it appear that FTX's revenues were higher than they were.

25   In 2022, I provided that misleading information to auditors.  I

N2SZZSINP-DC

1    understood that the information would be used by Sam

2    Bankman-Fried and others in raising or attempting to raise

3    funds from investors.

4            THE COURT:  OK.  How did you come to have that

5    understanding.

6            THE DEFENDANT:  I understood this information made its

7    way into the financials like, the formal GAAP audited

8    financials.  And that those were part of what was provided to

9    prospective investors.

10           THE COURT:  And how did you know they were provided to

11   investors?

12           THE DEFENDANT:  I think I had that general

13   understanding from overhearing conversations at FTX about what

14   information was provided to investors.

15           THE COURT:  Conversations with whom?

16           THE DEFENDANT:  With Sam Bankman-Fried and others.

17           THE COURT:  All right.  Is the allocution on those

18   counts satisfactory to the government?

19           MS. SASSOON:  Yes, your Honor, if I may, I will

20   provide a proffer on some jurisdictional --

21           THE COURT:  I was going to ask you that next.

22           MS. SASSOON:  There was mention of wire

23   communications, but I just wanted to proffer that for Counts

24   One and Two, which were the wire fraud counts, wires in the

25   form of Slack communications, customer wire transfer deposits

N2SZZSINP-DC

1    and other bank wires went through the Southern District of New

2    York in connection with these crimes.  For Count Three,

3    commodities fraud, the government would prove that FTX.com

4    permitted trading of crypto derivates, such as future

5    contracts, which would constitute commodities under the

6    statute.  And for Count Four, securities fraud, the government

7    would prove that equity investors in FTX would receive stock,

8    which constitute a security under the relevant statute.

9             THE COURT:  Thank you.

10            Mr. Singh, do you agree with what Ms. Sassoon said?

11            THE DEFENDANT:  I do.

12            THE COURT:  OK.  Now, let's go to Count Five.

13            THE DEFENDANT:  This is the campaign finance charge.

14            THE COURT:  Well, you're getting ahead of me.  I'm

15    sure you are a smart fellow, but let me get there first.

16            Did you, as charged in Count Five, conspire to commit

17    money laundering?

18            THE DEFENDANT:  Yes.

19            THE COURT:  All right.  What did you do that, in your

20    mind makes you guilty of money laundering conspiracy?

21            MR. GOLDSTEIN:  Just, again, your Honor, his

22    allocution --

23            THE COURT:  You want to take both counts together?

24            MR. GOLDSTEIN:  Yes.

25            THE COURT:  Did you, as charged in Count Six, conspire

1    to defraud the United States and willfully to violate the

2    Federal Election Campaign Act?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Please tell me, in your own words, what it

5    is you did that, in your mind, makes you guilty of the crimes

6    charged in Counts Five and Six.

7              THE DEFENDANT:  In 2022, I agreed with others at FTX

8    and Alameda to make political donations in my name that were

9    funded in part by transfers from Alameda.  Although I agreed

10   politically with many of the donations, I did not select the

11   candidates and the political action committees who received the

12   donations.  And I understood that the donations were in part

13   for the benefit of Sam Bankman-Fried and FTX and their ability

14   to be politically influential.

15             I also understood that any reporting of the donations

16   would conceal that the money came from Alameda.  And I knew at

17   that time that Alameda money had to be coming, effectively,

18   from FTX customer funds.

19             I knew that this misleading information about the

20   campaign donations, that said that I made the donations, would

21   be reported by the government.  And at the time I was not sure

22   whether my conduct was unlawful because I wasn't familiar with

23   the campaign finance rules, but I knew my conduct was wrong.

24   And I chose not to ask questions that would have made it clear

25   that facilitating these donations was unlawful.

N2SZZSINP-DC

1          THE COURT:  Did you understand that there was a

2    substantial risk that what you did was prohibited by law?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And did you consciously act to avoid

5    learning whether, in fact, it violated the law or not?

6          THE DEFENDANT:  May I have one moment to discuss with

7    counsel?

8          THE COURT:  Please.

9          (Defendant conferred with counsel)

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Is the allocution satisfactory to the

12    government?

13          MS. SASSOON:  Yes, your Honor.

14          And with respect to Count Five, the money laundering

15    charge, the government would prove that wire transfers occurred

16    within the Southern District of New York.

17          THE COURT:  Thank you.

18          Do you agree with what Ms. Sassoon just said?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  OK.  How do you now plead to the charges

21    in Counts One through Six, guilty or not guilty?

22          THE DEFENDANT:  I plead guilty.

23          And, your Honor, I'm unbelievably sorry for my role in

24    all of this and the harm that it's caused.  I'm hoping that in

25    accepting responsibility, assisting the government, and

N2SZZSINP-DC

1    forfeiting assets, I can begin to make it right.

2              THE COURT:  Thank you.

3              Are you pleading guilty because you, in fact, are

4    guilty of those crimes.

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  OK.  You may be seated.

7              I will accept the plea of guilty.  A judgment of

8    guilty will enter.  The defendant acknowledges that he is, in

9    fact, guilty as charged in the information.  He knows that he

10   has a right to a trial.  He knows what the maximum possible

11   sentence is.  And he has an understanding of the applicable

12   sentencing guidelines.  I find that the plea is voluntary and

13   supported by an independent basis in fact containing each of

14   the essential elements of the offense.

15             Now, Mr. Singh, as I told you, the probation

16   department will prepare a presentence report to assist in

17   sentencing you.  You're going to be interviewed by the

18   probation officer who does that.  It's important that you be

19   truthful and accurate with the probation officer.  The report

20   may well be quite important in my decision as to what to

21   sentence you to.  You and your lawyers will have the right to

22   examine and comment on the report and to speak on your behalf

23   before you are sentenced.

24             Any written submissions on behalf of the defendant

25   must be submitted to chambers not later than three weeks before

N2SZZSINP-DC

1   the sentencing date.

2           Do we have a control date for sentencing?

3           MS. SASSOON:  The parties would propose a date

4   approximately 18 months from now.

5           THE COURT:  Andy.

6           THE DEPUTY CLERK:  Sure, Judge.

7           Judge, 18 months from now, how about November 13,

8   2024, Judge?

9           THE COURT:  Sentencing is set for November 13, 2024,

10  at 10:00 a.m.

11          Now, it's premature, I'm sure, to set a date for the

12  submission of the prosecution case summary, yes?

13          MS. SASSOON:  Yes, your Honor.

14          THE COURT:  What do you propose?  Do you want to say

15  September of 2024?

16          MS. SASSOON:  Yes, your Honor.  Thank you.

17          THE COURT:  The prosecution case summary will be

18  submitted to probation no later than September 1st, 2024.  And

19  leave it to probation and the defense to work out an interview

20  date, unless somebody has a better idea.  Now --

21          MS. SASSOON:  Yes, your Honor.  And we have a trial

22  date in this matter for Samuel Bankman-Fried, and after that

23  trial date we can circle back with the Court about setting

24  other deadlines related to Mr. Singh's sentencing.

25          THE COURT:  Now, there's an application with respect

N2SZZSINP-DC

1     to the filing of redacted copies of the superseding

2     information.  And the forfeiture preliminary order of

3     forfeiture.

4              Any objection to any of that?  Have you all agreed on

5     that?

6              MS. SASSOON:  Yes, your Honor.  And there's a related

7     redaction to the plea agreement that I know doesn't get filed

8     on the docket, but to the extent there is a public version made

9     available to interested parties, we would redact identical

10    language from the employment.

11             THE COURT:  Well, it's not the Court's practice to

12    make them available.

13             MS. SASSOON:  I know that our office sometimes

14    provides it given that it's a court exhibit.

15             THE COURT:  OK.

16             MS. SASSOON:  And I would just note that the

17    redactions, we would provide unredacted copies in the course of

18    executing the forfeiture.  So to the extent that we need to

19    coordinate the forfeiture of shares and the like, we would

20    provide the unredacted copy to parties that we would need to

21    coordinate with for purposes of executing forfeiture.

22             THE COURT:  Mr. Capone, anything on that?

23             MR. GOLDSTEIN:  Mr. Goldstein.  No, your Honor, no

24    objection.

25             THE COURT:  Oh, excuse me.  I should know better.

N2SZZSINP-DC

1          OK.  Now, let's take a bail.  Who's going to handle

2     that for the government?

3          MS. SASSOON:  The government has a proposed bail

4     package for your Honor's consideration set forth in the plea

5     agreement on page 5.  And the proposed conditions are a

6     $250,000 personal recognizance bond signed by one financially

7     responsible person, travel restricted to the Continental United

8     States, surrender of travel documents, with no new

9     applications, supervision as directed by pretrial services, and

10    other standard conditions of supervision.  And I think relevant

11    context here is that this defendant voluntarily traveled back

12    to the United States from the Bahamas shortly after the

13    implosion of FTX, in part for the purpose of beginning meetings

14    with the government.  And so, principally, for that reason,

15    along with his cooperation, we don't have concerns that these

16    conditions will not be sufficient.

17         THE COURT:  All right.  I find that the conditions are

18    sufficient.

19         And does the government want to submit a bail order,

20    or do you trust your luck with Andy?

21         MS. SASSOON:  I always trust Andy, Your Honor.

22         THE COURT:  OK.  Mr. Singh, you understand what the

23    bail conditions are?

24         THE DEFENDANT:  I do, your Honor.

25         THE COURT:  You understand you absolutely have to

N2SZZSINP-DC

1    comply with them, yes.

2              THE DEFENDANT:  Yes.

3              THE COURT:  And you understand if you don't show up as

4    required for sentencing, you could be prosecuted for escape?

5              THE DEFENDANT:  I missed a word from that, your Honor.

6    Sorry.  If I don't show up at what for sentencing?

7              THE COURT:  If you don't show up, as directed, for

8    sentencing, you could be prosecuted for escape and subject to

9    another prison term?

10              THE DEFENDANT:  I understand your Honor.

11              THE COURT:  OK.  Anything else this morning?

12              MS. SASSOON:  May I have one moment, your Honor?

13              THE COURT:  Please.

14              MS. SASSOON:  Nothing from the government.  Thank you,

15    your Honor.

16              MR. GOLDSTEIN:  Your Honor, we understand that

17    Mr. Singh will sign the bond and be released today.

18              THE COURT:  Say again, please?

19              MR. GOLDSTEIN:  We understand that Mr. Singh will be

20    able to sign the bond and be released on those conditions

21    today.

22              THE COURT:  OK.

23              MS. SASSOON:  Yes, your Honor.

24              THE COURT:  Fine.  OK.  I thank you all.  And we'll

25    sort out all the paper here in due course.  * * *