OauWsinS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                 v.                          22 Cr. 673 (LAK)

5    NISHAD SINGH,

6                 Defendant.
                                             Sentence
7    ------------------------------x

8                                            New York, N.Y.
                                             October 30, 2024
9                                            3:00 p.m.

10   Before:

11
                         HON. LEWIS A. KAPLAN,
12
                                             District Judge
13
                              APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  NICOLAS T. ROOS
          NATHAN M. REHN II
17        DANIELLE R. SASSOON
          DANIELLE M. KUDLA
18        Assistant United States Attorneys

19   COOLEY LLP
          Attorneys for Defendant
20   BY:  ANDREW D. GOLDSTEIN
          RUSSELL CAPONE
21        ANUPAM DHILLON
          JORGE SARMIENTO
22

23   Also Present:  Special Agent Kristin Allain, FBI

24

25

OauWsinS

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. ROOS:  Your Honor, good afternoon.  Nicolas Roos, |
| 3 | Thane Rehn, Danielle Sassoon, Danielle Kudla, from the United |
| 4 | States Attorney's Office, for the government.  We're joined at |
| 5 | counsel's table by Special Agent Kristin Allain on behalf of |
| 6 | the FBI.  Some of Allain's colleagues are also seated in the |
| 7 | back. |
| 8 | THE COURT:  Good afternoon, everybody. |
| 9 | MR. GOLDSTEIN:  Good afternoon, your Honor.  Andrew |
| 10 | Goldstein for the defendant, Nishad Singh, and I'm here with |
| 11 | Russell Capone, Anu Dhillon and Jorge Sarmiento, all from |
| 12 | Cooley LLP. |
| 13 | THE COURT:  Good afternoon. |
| 14 | Mr. Goldstein, have you and your client had the |
| 15 | presentence report for the necessary period? |
| 16 | MR. GOLDSTEIN:  We have, your Honor. |
| 17 | THE COURT:  Mr. Singh, have you read the presentence |
| 18 | report? |
| 19 | THE DEFENDANT:  I have, your Honor. |
| 20 | THE COURT:  Have you read all of it, including the |
| 21 | proposed terms of any supervised release that I might impose? |
| 22 | THE DEFENDANT:  Yes. |
| 23 | THE COURT:  OK.  You may be seated.  Thank you. |
| 24 | Are there any unresolved objections to the presentence |
| 25 | report that are material to this proceeding? |

OauWsinS

1           Mr. Roos.

2           MR. ROOS:  I don't believe so, your Honor.  There was

3    one issue I was discussing with Mr. Goldstein, but I think the

4    government believes the guidelines, both the factual

5    allegations and the guidelines in the PSR are correct.

6           THE COURT:  OK.

7           Mr. Goldstein.

8           MR. GOLDSTEIN:  We don't think there are any issues

9    that are material to sentencing, your Honor.

10          THE COURT:  OK.  Thank you.

11          Then I adopt the presentence report and the guideline

12   computation and range it contains.

13          I have had the benefit of a mass of material in

14   connection with this sentencing.

15          There's the presentence report;

16          I've reviewed the amended and now partially signed

17   consent preliminary order of forfeiture;

18          I have a letter from  the Cooley firm, attaching a

19   letter from Mr. Ray of FTX;

20          I have a letter from McCarter & English on behalf of a

21   client of that firm, which I believe counsel have both seen;

22          I have the government's letter of October 23, which is

23   probably the longest 5K letter I ever saw; and

24          A submission on behalf of the defendant that fills a

25   looseleaf binder.

OauWsinS

1              Is there anything else that I should have been aware

2      of that I haven't mentioned?

3              MR. ROOS:  No, your Honor.

4              MR. GOLDSTEIN:  That's everything, your Honor.

5              THE COURT:  OK.  Thank you.

6              I will, therefore, hear from Mr. Goldstein.

7              MR. GOLDSTEIN:  Thank you, Judge Kaplan.

8              It has been an honor for me and for my colleagues who

9      are here today to be able to represent Nishad Singh over these

10     past two years.  He is a remarkable individual, as your Honor

11     saw firsthand in his testimony, and as reflected in the many

12     letters submitted on his behalf.

13             Nishad is joined in court here today by several

14     members of his family and his extended family -- his brother

15     Malhar, his parents Gururaj and Anu, his fianceé Claire and

16     members of her family as well as uncles, aunts and college

17     friends and many people he calls cousin even if not related by

18     blood.  They all had to travel here, many from across the

19     country, and they're here because they know the kind of person

20     Nishad is.  They understand what he did and why we're here, and

21     they love him unconditionally.  And they want to make sure that

22     the Court sees the incredible support network that Nishad has,

23     which is a testament to who he is.

24             Your Honor, what I want to spend most of my time today

25     talking about is what we think is a critical element that

OauWsinS

1    underlies the Court's consideration of the Section 3553(a)

2    factors in this case.  It's an element that goes beyond

3    Nishad's exemplary cooperation and assistance to the

4    government, which we'll talk about as important, but is not, we

5    think, the main issue here.  And it goes beyond his personal

6    characteristics, which truly are extraordinary and which we'll

7    also address.  But the element that we think the Court should

8    focus most on is Nishad's role in the underlying offenses.

9    That is what separates him most significantly from the other

10   cooperators in this case and especially from Caroline Ellison,

11   whom the Court sentenced to a period of incarceration.

12         There's no question that Nishad pled guilty to serious

13   offenses, and he does not minimize that conduct in any way.

14   Indeed, as the government spelled out in its own submission, it

15   was Nishad who brought to the government's attention most of

16   the conduct that was the subject of his plea.  But it is

17   critical for the Court to view what he did, his conduct, with

18   precision in the context of all that happened here, and that's

19   why we laid it out in some detail in the lengthy sentencing

20   submission that you referenced.

21         The bottom line is that the Court rightly referred to

22   this case as one of the greatest financial frauds ever

23   perpetrated in this country; it was.  But as we and the

24   government make clear in the submissions to your Honor, the

25   overwhelming majority of the conduct that made it such a

OauWsinS

monumental crime took place before Nishad ever became involved.
At the heart of this case is a series of decisions to steal
billions of dollars in FTX customer money and use that money to
shore up Alameda and to pay Alameda's debts.  Those decisions
were made by Sam Bankman-Fried with the necessary complicity
and assistance of Caroline Ellison, and they did it over a
period of years.  And all of that happened before Nishad became
involved, before he knew what was going on.

From his first days as an entry-level engineer at
Alameda in late 2017 all the way until September of 2022, just
two months before FTX collapsed, Nishad did not know about the
theft of customer funds, and he did not participate in it.  It
was during that time period, the months and years before he
knew what was going on, that nearly all of the billions of
dollars that are at the heart of this case were stolen.

As the trial testimony showed and the evidence showed,
it was Bankman-Fried, with Ellison's assent, who made the
decision in 2021 to use a billion dollars in customer funds to
buy back finance stock.  Nishad had nothing to do with that.
He had nothing to do with the decisions to spend hundreds of
millions of dollars on real estate, on stock in Robin Hood, on
investing in K5, a company called Genesis Digital Assets.
Nishad was in the dark, was not in the inner circle, when all
of that happened.  He did not know that any of those purchases
were being made with customer money.  And as the government

OauWsinS

made clear in its submission, Nishad also had nothing to do
with the most critical set of decisions in this case, the
decisions by Bankman-Fried and Ellison in June of 2022, in the
wake of the crypto crash, to pay back Alameda's lenders with
billions of dollars in customer funds.  That was their crime.
That was not Nishad's crime.

        In fact, when you look at what Nishad did during that
whole period before September of 2022, he was one of the only
voices in the company pushing Bankman-Fried to restrain from
spending, and he didn't do that because he knew or appreciated
that they were stealing customers' money.  He didn't know.  The
reason he pushed back is because, in his view, all of that
spending violated the purpose of the whole enterprise.  To
Nishad, the main reason they were there, the main reason they
were trying to make all this money, was to be able to donate it
in a way that would ultimately make a positive difference in
the world.

        Look, I get that that sounds corny, and it could be
hard to believe, and it is obvious that there were many people
who professed an interest in effective altruism who were using
it as a cover and that didn't really believe in it.  But to
Nishad, as the letters to the Court demonstrate, it was the
real thing.  His belief and commitment to doing good with the
money that he made, that's what drove him to work around the
clock at FTX.  That's why he was there.  And it wasn't his role

OauWsinS

1    in any way to evaluate or even to weigh in on spending

2    decisions.  Sam Bankman-Fried made sure to remind him of that

3    when Nishad sometimes challenged him.

4           His job was to manage the engineers.  He wasn't the

5    CEO.  He wasn't the COO or the CTO, like Gary Wang.  He was

6    subordinate.  He was subordinate to Sam.  He was subordinate to

7    Gary.  And both of those individuals made that clear to Nishad.

8    And that made it all the more exceptional, for someone in

9    Nishad's position, when he saw spending that he thought was

10   wrong, to be the one person at the company to say something to

11   Sam Bankman-Fried, even in the face of humiliation in front of

12   his colleagues.  And that brings us to why we are here, to

13   September of 2022, when Nishad learned for the first time what

14   Bankman-Fried, Caroline Ellison and Gary Wang had known for

15   years -- that Alameda had been using billions of dollars in FTX

16   customer funds.  Nishad will forever regret the role that he

17   played between then and when he left the Bahamas shortly before

18   the bankruptcy two months later.

19          That said, he did many things during that time period

20   that are to his credit.  He fought against additional spending

21   by Bankman-Fried.  He successfully reversed upwards of $200

22   million in spending during those final two months, which was

23   exponentially more than the expenditures that he ultimately

24   signed off on and are the basis for his plea.  He took several

25   additional concrete steps to protect customer funds, and as

OauWsinS

1    your Honor heard in his testimony, when customers started to

2    withdraw money from the exchange in early November, Nishad

3    refused to go along with the lies that Sam Bankman-Fried told

4    to the public.  But, and the reason we are here is, because

5    despite learning of the fraud, Nishad signed off on company

6    expenditures that he knew that necessarily had to be coming

7    from customer funds at that point.  And most regrettably, he

8    completed the close on a house that his friends had lined up

9    for him to purchase.

10           To be clear, Nishad kept nearly all of his assets on

11   the exchange, and they are now or soon will be in the custody

12   of the debtors or the government and will be used to make

13   customers whole.  But it was a deep mistake for Nishad not to

14   back out of the home purchase, and he's going to forever be

15   ashamed of that decision.  And during that same time period,

16   Nishad also allowed himself to be used as a straw for a

17   substantial amount of campaign donations.

18           Both we and the government have addressed his role in

19   the campaign finance offense at length in our submissions, and

20   I don't want to go into great deal here.  Nishad's conduct for

21   that element of this case was wrong, full stop, and he has

22   accepted responsibility for it.  But again, for this set of

23   conduct, he could not be more differently situated than the

24   others who were involved, than Sam Bankman-Fried or from Ryan

25   Salame, both in the level of his involvement and in his motive

OauWsinS

1   for allowing himself to be used in the way that he was.

2          Bankman-Fried, as you know, used the donation scheme

3   to amass power and influence for himself.  Ryan Salame,

4   likewise, was motivated by self-aggrandizement, touting himself

5   as a Republican mega donor and traveling the country to meet

6   with politicians.  Nishad, on the other hand, gained nothing

7   from engaging in this offense.  He participated because Sam

8   Bankman-Fried and others whom Nishad placed too much trust in

9   asked him to play the role that he did.  Nishad actively

10  disavowed any publicity or benefit from his donations, and for

11  some time the donations indeed came from his own money and were

12  from noble purposes.  But his error in judgment came when he

13  did not push back in 2022, when he learned that his account was

14  being funded by Alameda and when he saw that the donations that

15  were lined up by others were becoming less in line with his own

16  values.  And that was wrong.  But it is wrong on an entirely

17  different level when contrasted with the actions and the

18  cynicism and the self-aggrandizement of Bankman-Fried and

19  Salame.

20          And of course, as the government makes clear in its

21  submission, Nishad himself was the one who brought all of this

22  conduct to the government.  The government likely would never

23  have been able to uncover it and to bring Salame to justice, to

24  rely on it during Sam Bankman-Fried's sentencing without the

25  evidence that Nishad brought forward right at the beginning of

OauWsinS

1    his cooperation.

2            As the Court knows, Nishad has taken full

3    responsibility for all of the actions that give rise to why

4    we're here today, and he has devoted his energies over the past

5    two years to try to make things right.  And he will continue to

6    do so.  That is his absolute commitment.  But we ask the Court,

7    in imposing sentence, to be clear-eyed about his conduct.

8            Nishad's role, across the board, was dramatically more

9    limited than that of his coconspirators.  His conduct was not

10   in the same ballpark as the others, and his sentence should

11   reflect as much, even before the Court takes into consideration

12   his exemplary cooperation and his personal characteristics.

13           Let me turn to the Section 3553(a) factors, starting

14   with the history and the characteristics of the defendant.  And

15   this factor, too, is unusual here and is a powerful reason for

16   leniency in this case.

17           Nishad recently turned 29 years old, and he has packed

18   into that brief number of years a life of generosity toward

19   others, unselfishness, good works and charity.  As all these

20   letters came in on his behalf for us to present to your Honor

21   as part of the sentencing, letter after letter attesting to

22   Nishad's good character, his moral compass, his compassion for

23   others, he asked us if it was too much; that we should tell

24   people not to write.

25           The reason that courts take into consideration the

history and characteristics of a defendant is because the

imposition of the sentence reflects not only the conduct but

the person.  And a person who has lived a meaningful life, in

service of others, should be sentenced in a way that reflects

that character.  And that is Nishad.

As counsel, we saw it for the first time when we met

with him, at the very beginning of this case, in the wake of

the FTX collapse.  While he was trying to hold it together

mentally, under the most difficult of circumstances, all Nishad

wanted was to find ways to help, to be of service, to help

recover assets for victims, to help figure out who was

responsible for a massive hack of FTX that happened in its

closing days, to help the government uncover and understand

everything that had happened here.

As your Honor knows, most cooperators come to the

government out of self-interest, calculating that that's the

best way to receive a lesser sentence.  But that is not why

Nishad started to cooperate.  He started to cooperate the

moment he was able to after leaving the Bahamas, and he came to

the government because he thought that it was the right thing

to do.  And the letters that the Court has seen show how Nishad

invariably thinks of others before himself.

He is, as we said in our submission, an uncommonly

selfless individual.  He made a commitment at a very early age

to use his talents and his energy in ways that would help

OauWsinS

others and contribute positively to society, even at times
where it came at great personal sacrifice.  Your Honor has seen
the detailed accounts in the letters of Nishad's good works:
How he reached out to a socially isolated girl with
developmental disability, woke up day after day at 5 a.m. to
run with her and to be her friend; how he took a young unhoused
individual with severe medical issues to the hospital and
stayed by his side until he received care; how he quietly
donated what he earned from a college internship in order to
purchase bed nets to help with malaria in Africa, and did that
without telling other people.

Your Honor saw how he was beloved by his colleagues at
FTX precisely because he put their needs above his own.
Eighteen former FTX and Alameda employees wrote letters for
Nishad, even though they all knew that he played a role in
deceiving them.  And they wrote because they want to be sure
the Court knows what an exceptional person Nishad is.

One of the letters that your Honor received noted that
you can judge someone's character by how he treats those who
can do nothing for him.  And by that measure, Nishad's
character, his soul really is unimpeachable.  It had its
moments of weakness, like anyone else, but it is fully intact.

To give you one example, Christian Drappi, who
testified at trial, reached out to me and to my colleague,
Russell Capone, with a letter in support of Nishad that we

OauWsinS

1    didn't ask for -- it just showed up in our inboxes -- and it

2    described the young man who we've come to know in these last

3    two years.  Mr. Drappi wrote:

4            Unfortunately, it was all too common for higher

5    ranking FTX employees to treat the Bahamas staff with much less

6    than the respect they deserved.  I'm proud to say that Nishad

7    was the opposite.  That is part of why he was so beloved by

8    everyone at the company.

9            You saw as much in the words of FTX staff who

10   themselves wrote letters in support of Nishad, from the people

11   who cooked food for the company, who cleaned apartments, who

12   served as physical trainers.  All of them attested to Nishad's

13   goodness.  I don't know if there's any better indicator of

14   Nishad's character than the words of these individuals who

15   Nishad had little to gain from but who he treated as well as he

16   treated the most senior members of FTX's staff.  We submit that

17   the Court's sentence here should reflect this extraordinary

18   character and this record of good works that is remarkable for

19   someone who is only 29 years old.

20           Now let me turn to the other Section 3553(a) factors,

21   which include the nature and circumstance of the offense, the

22   need to promote respect for the rule of law, and deterrence.

23           We don't think specific deterrence is a factor here.

24   There's no question that Nishad is not going to commit another

25   crime, but I do want to directly address the nature of the

OauWsinS

offense, respect for the rule of law and general deterrence.
And here's where the clarity about Nishad's role is so
critical, because the Court is faced with a situation where the
offenses overall were indeed monumental and where we do not
question the importance of sending a strong deterrent message.
But this is also a situation where Nishad was a subordinate
employee, whose role in the offenses was far more limited than
the others', where he joined the main conspiracy after nearly
all of the criminal conduct had occurred, and where the other
conduct subject to his plea only came to light because of
Nishad's cooperation with the government.

        For a defendant in that situation, the deterrence
calculation should be different than it is for others with
greater involvement and responsibility.  A sentence of time
served for Nishad under these circumstances, we submit, would
further respect for the rule of law and the interest of
justice.  It would show that even when your own role in an
offense is limited and your potential exposure is lower than
the others', but you decide, as he did, to do the right thing,
and without any hesitation to cooperate with the government,
that you receive meaningful credit for doing so.

        We submit that for Nishad, there is no "get out of
jail free" message for a sentence of time served.  The message
the Court would send is to give an incentive to employees with
lower levels of culpability who get caught up in wrongdoing, an

OauWsinS

incentive for them to come forward.  As the Court knows, I was

an assistant U.S. attorney at the Southern District for a long

time, and that kind of message, to this kind of a defendant, is

an essential part of the government's cooperation program, and

it is an essential part to furthering the interest of the rule

of law.

          To be clear, there have been and will continue to be

real penalties for Nishad here.  He has forfeited and given up

the right to enormous amounts of assets.  He never cared for

money for himself.  He didn't give a split second's thought to

turning everything over, but this has meant that Nishad has

forfeited and given back tens of millions of dollars in assets

that he actually may have had a legitimate legal claim to.  He

forfeited, for example, his shares in Anthropic, which he

purchased well before he participated in any criminal

conspiracy.  He's also given back to the estate hundreds of

millions of dollars in crypto holdings, the vast majority of

which were purchased well before he knew about or participated

in any illegal activity.  He did this because it was the right

thing to do, regardless of the details of his involvement and

his plea.  But this meant that he has and is in the process of

turning over effectively all of whatever he's earned in his

life.  He has had to completely start over.

          He has also suffered very significant and irreparable

reputational harm.  In the wake of his cooperation, Nishad has

OauWsinS

```
1    been publicly accused of having a far greater role in the

2    offenses than he did.  The press reported that Nishad

3    personally walked away with $500 million.  That was false, as

4    your Honor knows.  The press also reported that Nishad wrote

5    the so-called back door into the FTX code in order to be able

6    to steal customer money, when the truth, as was clear during

7    trial and as your Honor knows, is that Nishad wrote code for an

8    entirely legitimate purpose, and it was then Bankman-Fried and

9    Wang who later changed that code and then, without his

10   knowledge, started using those changes to be able to steal

11   customer funds.  But as a cooperating witness for the

12   government, Nishad had no ability to respond, no ability to

13   make the truth known until the evidence came out at trial.  And

14   now there are hundreds of articles about this case that are

15   still available online today that falsely describe Nishad's

16   role and conduct.

17           On top of that, cooperating in the way that Nishad has

18   has been a full-time job by itself.  He met with the government

19   25 times.  Multiple regulators have reached out and have gotten

20   his assistance.  They've even done so in the last month.  And

21   when they reach out, Nishad drops everything.  He digs into the

22   records that he still has access to.  He meets with his

23   counsel.  He tries to piece together what he remembers, and

24   then he spends hour after hour with regulators and

25   investigators.  And he's done that again and again and again.
```

OauWsinS

1          He's provided meaningful assistance not just to DOJ,

2     but to the SEC, the CFTC, three different state regulators, the

3     bankruptcy estate and the plaintiffs in the MDL class action.

4     And his assistance has been critical to unraveling multiple

5     aspects of what happened with FTX, which serves the interests

6     of law enforcement, the public, the rule of law and the ability

7     of the estate and the government to recover assets.  And again,

8     a sentence of time served here would encourage this kind of

9     laudable, across-the-board cooperation for somebody in Nishad's

10    position, who might otherwise be deterred from making the

11    decision to cooperate with the government.

12         Your Honor, everything about this case has been tragic

13    and has been devastating for so many people.  There are so many

14    victims here, the many customers at FTX who lost so much money,

15    the innocent employees who lost their jobs and faced the stigma

16    of having worked at FTX.  All of that is tragic.  And the fact

17    that Nishad Singh, a young man who devoted his whole life to

18    helping others, to relieving suffering in the world since even

19    before elementary school, the fact that he got caught up in Sam

20    Bankman-Fried's criminal enterprise, that, too, is a tragedy.

21         What happened with FTX and the knowledge that he

22    played a part in nearly destroyed Nishad.  But the Court should

23    look at what he's done since the moment he got on the plane and

24    left the Bahamas.  He has done everything right, at enormous

25    personal and family sacrifice.  He has rebuilt his life.  He

1    found important work that he is excelling at, becoming an

2    invaluable employee.  He volunteers at a daytime sanctuary for

3    the unhoused in San Francisco and has become a true role model

4    there.  In his evening hours, he's building software for an

5    affordable housing project, and he's looking forward to his

6    wedding with his fiancée Claire.

7         The Court's sentence under the Section 3553(a) factors

8    should reflect not only the conduct which we've discussed and

9    the person but also what the person has done to move forward,

10   to rehabilitate.  And here, it's impossible to say that Nishad

11   could have done anything better than what he has done.

12        I just want to close by sharing one thing about those

13   first few months that we had representing Nishad during the

14   most intense periods of his cooperation with the government.

15        Every time Nishad would meet with the government, he

16   would fly across the country and come to our office to prepare.

17   But he never did that alone.  His father, who is in the

18   courtroom today, would fly with Nishad every time, would come

19   into our office every day, and would sit in the conference room

20   directly across from us for days on end, just sitting there, so

21   that his son knew that he was right across the way, that he was

22   there.  Nishad's father was at our office so much that he

23   became on a first-name basis with the barista in our office's

24   cafe, more than most of us can say.  And he did this because he

25   couldn't, and wouldn't, leave Nishad alone.  And on the one or

1    two occasions when his dad could not figure out a way to be

2    there, Nishad's brother and his fiancée Claire came out and did

3    the same thing.

4        Mr. Capone and I have been doing this for a long time,

5    both as prosecutors and as defense lawyers, and we've never

6    seen anything like it.  They were there for Nishad to do the

7    hard, loving work of helping him put his life back together,

8    which they've all done together, bit by bit, day by day.

9        Nishad was on the right path long before he got caught

10   up with Sam Bankman-Fried and FTX, and with all of this love

11   and support, he is on the right path again.  We ask the Court

12   to allow that to continue and to recognize all of these very

13   unique circumstances that are present here.

14       Thank you, your Honor.

15       THE COURT:  Thank you.

16       Mr. Singh, you have the right to speak.  Is there

17   anything you'd like to say?

18       Whenever you're ready.

19       THE DEFENDANT:  Your Honor, thank you for allowing me

20   the opportunity to speak today.

21       I'm overwhelmed with remorse for the harm that I

22   participated in and I've caused to so many innocent people.

23   The two months before and the two months after FTX's collapse

24   were the hardest of my life.  I made some choices I'm proud of,

25   but I made many, many others that I'm deeply, deeply ashamed

OauWsinS

1    of.  I spend a lot of time thinking about what all I should

2    have done differently in that time, but there is much less to

3    be uncertain about in how I should have acted in all of the

4    years prior.

5            For nearly my whole professional career, I'd looked up

6    to and I'd supported Sam.  And I did so even though I'd seen

7    very clearly, time and again, how he could be deceptive and

8    self-serving.  Even before I learned of the fraud on customers,

9    I had compromised on what I thought was right, excused what was

10   so clearly wrong and participated in actions that I knew were

11   deceptive.  I alone bear responsibility for my actions and

12   inactions.

13           So many other good people have suffered as a result of

14   what I took part in, employees who showed me love, trust and

15   kindness, customers who relied on us to safeguard their

16   financial futures and the people of the Bahamas who embraced

17   us.  All of them have paid for my mistakes.  They lost their

18   money and so much more.  I strayed so far from my values, and

19   words cannot fully express how sorry I am to them.

20           I can't undo the damage I've caused and I don't expect

21   forgiveness, but I am committed to making amends in safe,

22   concrete and non-grandiose ways.  I want to be someone who

23   contributes positively to society, someone who those I've

24   harmed, all the people I previously mentioned, could eventually

25   see as having made earnest efforts to right these wrongs.

OauWsinS

| | |
|---|---|
| 1 | I'm grateful to the government for giving me my first |
| 2 | chance at this.  Aiding in their investigation gave me a sense |
| 3 | of purpose and a path to help when I needed it most.  But I |
| 4 | still have an enormous debt to society that I need to repay and |
| 5 | a mostly full life ahead of me with which to try to do so. |
| 6 | Over the past two years I've been reflecting on, and I've been |
| 7 | trying to live, such a life, one that is a life of tangible and |
| 8 | robust good.  I've come to see the importance of direct actions |
| 9 | over abstract fulfillment of ideals.  Trying to be present, |
| 10 | helpful and supportive to those in my immediate community has |
| 11 | grounded me and has given me new direction. |
| 12 | In this time, I've been fortunate to have the support |
| 13 | of my fiancée Claire and her wonderful family, my family and |
| 14 | friends from all times in my life.  They have stood by my side |
| 15 | despite everything, even when I was terrified that they had |
| 16 | every reason not to.  Their unwavering support has been a |
| 17 | source of strength, and I aspire to be worthy of their love. |
| 18 | Your Honor, I accept the consequences of my actions |
| 19 | and the judgment that you will pass.  I hope that in time my |
| 20 | future actions will demonstrate not just to you but to all of |
| 21 | those that I've harmed my commitment to making amends. |
| 22 | Thank you. |
| 23 | THE COURT:  Thank you. |
| 24 | Mr. Roos. |
| 25 | MR. ROOS:  Yes, your Honor. |

OauWsinS

| | |
|---|---|
| 1 | THE COURT:  I take it you have a motion. |
| 2 | MR. ROOS:  Judge, for starters, the government moves |
| 3 | for the Court to sentence Mr. Singh in light of the factors set |
| 4 | forth in Section 5K1.1(a) of the sentencing guidelines, 18 |
| 5 | U.S.C. 3553(e). |
| 6 | THE COURT:  And that's because. |
| 7 | MR. ROOS:  Because of the substantial assistance |
| 8 | that's set forth in our letter and that I'll be elaborating on |
| 9 | shortly. |
| 10 | THE COURT:  Granted. |
| 11 | Go ahead. |
| 12 | MR. ROOS:  Thank you, your Honor. |
| 13 | As your Honor observed, we submitted a lengthy letter |
| 14 | setting forth Mr. Singh's role in the offense and his |
| 15 | cooperation.  I'm not going to reiterate all of the points here |
| 16 | today, but I do want to focus in particular my remarks on the |
| 17 | cooperation in this case. |
| 18 | The government's case was built on the testimony of |
| 19 | cooperating witnesses, not just at the trial but in bringing |
| 20 | the case.  The case was brought before much of the evidence -- |
| 21 | documentary -- had been amassed, and that is due to the role of |
| 22 | Mr. Singh, and others, coming forward.  And I want to focus on |
| 23 | his conduct. |
| 24 | Mr. Singh made the decision to come in immediately. |
| 25 | He didn't wait to see who else was cooperating.  He didn't wait |

OauWsinS

1  to see what the evidence looked like.  He didn't wait for a

2  pitch from the government, threatened charges, anything like

3  that.  He came in immediately.  He took responsibility for the

4  fraud on customers and then proceeded to incriminate himself,

5  over a series of meetings, in involvement in crimes that the

6  government had not yet become aware of and, in fact, had no

7  leads at that point.  And he did that not just by being

8  truthful in interviews but by giving us documentary evidence

9  that we described in our submission that the government did not

10  have and likely never would have.

11          Mr. Singh provided this information in a number of

12  ways that were helpful to the government.  He did it by

13  describing detailed conversations with Mr. Bankman-Fried.  For

14  instance, as the Court heard at his trial testimony, from the

15  beginning, Mr. Singh described a conversation he had with

16  Bankman-Fried on the balcony of a penthouse apartment, in vivid

17  terms, describing the back-and-forth of the conversation, which

18  established that Bankman-Fried knew the size of the debt that

19  FTX was in, the fact that it was not able to cover the customer

20  deposits and that it was a problem that it was continuing

21  spending.  That was a conversation that was not otherwise

22  documented or recorded but the government relied on heavily in

23  its case and would not have otherwise been able to prove but

24  for Mr. Singh volunteering it.

25          Another example is the information on the massive

OauWsinS

campaign finance violation scheme perpetrated belie

Bankman-Fried, Ryan Salame and others.  That's a whole course

of conduct that was totally unknown by the government, was

brought to our attention exclusively by Mr. Singh and likely

would never have been discovered or would only have been

discovered by the detailed tracing of financial records, which

would have taken months, if not over a year, to do without the

help of Mr. Singh.  He provided information about a securities

fraud scheme that the government was not otherwise aware of

that was set forth in our submission.  He provided Signal chats

that were set to auto delete which would otherwise have been

gone without his cooperation.  And all of that happened in the

very few first weeks and months after FTX's collapse -- so not

in the course of preparing for trial or after he had pled

guilty, but while his status was still uncertain; he came

forward without any reservation and provided cooperation.  And

that was necessary to bring the charges and bring them quickly.

        Now, I was struck thinking about this moment in time

when I was hearing Mr. Goldstein speak and talking about the

ways in which Mr. Singh was not involved in some of the

conduct, and I was struck by the thought that it could have

been very easy for Mr. Singh to have denied everything.  He

could have said I didn't know, there's no evidence I was

involved in any of these things, because a lot of the ways he

inculpated himself in these proffers and interviews was by

OauWsinS

1   describing conversations which were not otherwise documented or

2   recorded.

3        He didn't have to disclose the campaign finance

4   scheme.  He didn't have to disclose his conversations with

5   Bankman-Fried, and you could imagine a different person

6   approaching the situation and choosing the path of denying,

7   deflecting responsibility, minimizing their own role.  And I

8   think that the cooperation here was so important and what

9   Mr. Singh should get credit for is the way he approached this

10  from the outset, in terms of immediately accepting

11  responsibility for his role in defrauding customers.  And it's

12  important generally, I think, to emphasize that cooperating

13  witnesses need to come forward and be candid from the outset.

14  And generally, as Mr. Goldstein alluded to, that's important

15  for incentivizing cooperation in the future.

16        The way I think about this is there was a fork in the

17  road in effect at the beginning of the case where Mr. Singh

18  could have chosen significant minimization but he chose

19  substantial assistance.  And that was critical to the

20  government's case.  And I think as the Court considers the

21  message that's sent in such a significant financial fraud such

22  as this one, in the same way that it considers general

23  deterrence, it should think about the message that can be sent

24  in sentencing a cooperating witness who came forward, who could

25  have fought the charges, who could have fought the involvement

OauWsinS

1  in the conduct, but instead chose immediate cooperation, and

2  think about how that could incentivize cooperation in the

3  future.  And here, I think leniency and recognition of

4  Mr. Singh's cooperation would send such an important message.

5          You know, one other comment I want to make before I

6  sit down.  This has to do with the time I spent and the rest of

7  the team spent with Mr. Singh in interviews and preps between

8  FTX's collapse and Mr. Bankman-Fried's trial.  And I'll say

9  that throughout that period, Mr. Singh expressed extreme

10 remorse, great remorse, for not just how things had ended but

11 how things had taken place.  And it was something that he

12 clearly was really grappling with that came through and, I

13 think, set him apart, the emotional aspect to it, that I found

14 genuine, full-throated and weighty.  I share this because in

15 case it wasn't clear from our submission, it clearly has really

16 weighed on him, and I believe that has been a motivating factor

17 in his cooperation.  Of course, people think about leniency

18 that can come from cooperation.  But for Mr. Singh, it was also

19 clear that he wanted to right a wrong or at least start to make

20 that effort and do the right thing.  And that's why he came in

21 the door just shortly after FTX's collapse.

22         Thank you.

23         THE COURT:  Thank you, Mr. Roos.

24         Mr. Singh, please stand for the imposition of

25 sentence.

OauWsinS

1        I'll start by reiterating the fact that this may have

2    been the greatest financial fraud in American history, and it's

3    a very, very serious crime.  But I'm entirely persuaded from

4    your testimony at trial and what I've learned from the advocacy

5    of both Mr. Goldstein and his colleague and the government that

6    your involvement was much more limited than certainly

7    Bankman-Fried and Ellison; that it came relatively late in the

8    day; that you were a young man in a situation with a somewhat

9    older person, Bankman-Fried, who was charismatic, demanding,

10    deceitful, and with whom you had a long relationship,

11    particularly with his brother, but with his family and with

12    him.  And I recognize how hard it would have been for anybody

13    coming to the realization that you came in September of 2022 to

14    have even begun to know what you should do.

15        In moments of uncertainty like that, especially

16    moments in the life of young and inexperienced people, without

17    exposure to the world that the lawyers in this room have long

18    been exposed to, I imagine you had no real idea of what to do

19    except I'll get better.  It's not an excuse, but it's something

20    that I think I understand.

21        And then something like eight weeks later, the crisis

22    erupted, in public, in full view, and you then realized the

23    only responsible thing to do, which is what you did.  You

24    didn't try to figure out what was the spectrum of options and

25    which ones best served your personal self-interest.  You knew

OauWsinS

1    that it was wrong.  You had known it was wrong, and you tried

2    to help.

3         Now, I'm not foolish enough to think that there was no

4    self-interest involved.  Obviously there must have been, but

5    you did the right thing.  You very quickly, within days of the

6    bankruptcy, told the truth, and what's even more telling is the

7    extent to which you immediately and truthfully, as far as I can

8    see, fully unburdened yourself to the government about the

9    wrongdoing of which you were aware and they quite clearly were

10   not and that were not really implied by what had come to the

11   public attention at the time of the bankruptcy filing and right

12   around then.  So that kind of underscores for me that there was

13   not only self-interest but a serious moral element to what you

14   did, and you are entitled to a lot of credit for that.

15        Your cooperation in this case has been remarkable.

16   You're not the only one who has cooperated in a remarkable way,

17   but you certainly are a very important cooperator who has

18   contributed to what, to me, seems an appropriate result all

19   around.  And I think the point that's been made, both by your

20   counsel and by Mr. Roos, is that as important as setting

21   examples of defendants who have been culpable in great

22   wrongdoing by imposing punishments that get people's attention,

23   it is equally important to take due account of the fact that

24   you can go too far in doing that, by which I mean being so

25   harsh, so taken with the enormity of the offense, that you

OauWsinS

1    impose a sentence that discourages others from doing what you

2    did.  And I don't intend to do that.

3           Your case is not the case that Ms. Ellison's was.  She

4    was involved from the beginning.  She knew for years what was

5    going on.  She got plenty of credit for cooperation, but you

6    deserve more.

7           For that reason and others, it is the judgment of this

8    Court that you be committed to the custody of the attorney

9    general of the United States, or his designee, for a term of

10    imprisonment of time served on each count, the terms to be

11    served concurrently; that you thereafter serve a term of

12    supervised release of three years; and that you pay the

13    mandatory special assessment of $600.

14           It is further adjudged that you shall forfeit to the

15    United States the sum of $11,20,000,000 jointly and severally

16    with the codefendants, as the term "codefendants" is defined in

17    the amended consent preliminary order of forfeiture, as to

18    specific property money judgment that I've signed already and

19    will refer to in my further remarks as the preliminary order,

20    as well as all of the specific property, as that term is

21    defined in the preliminary order or as more specifically

22    provided in the preliminary order.

23           The Court declines to order restitution based on my

24    finding that determining complex issues of fact related to the

25    cause and amount of the victims' losses would complicate and

OauWsinS

1    prolong the sentencing process.  I instead grant the

2    government's motion to authorize the United States to

3    compensate victims with finally forfeited assets through a

4    remission process, as restitution would be impractical in this

5    case.

6           The term of supervised release shall be subject to the

7    mandatory, the standard and the special conditions of

8    supervision set forth at pages 29 to 42 of the presentence

9    report, which you have told me you have read.  To the extent

10   that the special conditions are not imposed for entirely

11   obvious reasons, they are imposed for the reasons summarized in

12   the presentence report.

13          Does either counsel wish to have me read out the

14   conditions on to the record?

15          MR. GOLDSTEIN:  No, your Honor.

16          MR. ROOS:  No, your Honor.

17          THE COURT:  OK.  Thank you.

18          I advise you that to whatever extent you haven't

19   previously waived it, you have the right to appeal from the

20   judgment imposing this sentence.  If you wish to appeal, you

21   must file a written notice of appeal with the clerk of the

22   district court no later than 14 days after the date on which

23   judgment is entered on the docket, which is likely to be, I

24   think, tomorrow.  In the event you wish to appeal and you can't

25   afford to pay the fees necessary to do so, you may apply for

OauWsinS

 1   permission to appeal as a poor person.  If that application

 2   were granted, you would be permitted to appeal without payment

 3   of the fees, and if you couldn't afford a lawyer, a lawyer

 4   would be appointed for you at government expense.

 5          You may be seated.

 6          I have two other things to say.

 7          The first is to express appreciation to counsel on

 8   both sides for very illuminating and very helpful sentencing

 9   submissions, however long they were.

10          And I would like to say to Mr. Singh's parents -- and

11   this is purely personal; this is not a judicial judgment of any

12   kind -- I don't see anything you did wrong.

13          OK.  Thanks, folks.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25